**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-01540-SBP

T.C.,

     Plaintiff,

v.

MARTIN J. O'MALLEY, Commissioner of Social Security,[1]

     Defendant.

---

**OPINION AND ORDER**

---

**Susan Prose, United States Magistrate Judge**

     This action is before the court under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq.*, for review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff T.C.'s[2] applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). After careful consideration of the briefs, the social security administrative record, and the applicable law, the court respectfully **AFFIRMS** the Commissioner's decision.

**BACKGROUND**

     Plaintiff seeks judicial review of the Commissioner's final decision denying her DIB and

---

[1] Martin J. O'Malley is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See* 42 U.S.C. § 405(g) (an action survives regardless of any change in the person occupying the office of the Commissioner of Social Security).

[2] This Opinion and Order identifies Plaintiff by initials only per D.C.COLO.LAPR 5.2(b).

SSI applications filed on January 22, 2019, in which she claimed that she was disabled beginning

on March 10, 2018. ECF No. 8-2 at 15.[3] Plaintiff was 18 years old at the time of her alleged

disability onset date. *Id.* at 24-25; ECF No. 8-6 at 219. An Administrative Law Judge ("ALJ")

held an evidentiary hearing, and on August 5, 2021, issued a ruling denying Plaintiff's DIB and

SSI applications. *Id.* at 12-30. The SSA Appeals Council subsequently denied Plaintiff's request

for administrative review of the ALJ's decision, *id.* at 5-9, making the ALJ's August 5, 2021

decision the final decision for review by this court. Plaintiff timely filed her complaint in this

action seeking review of the Commissioner's final decision. EFC No. 1. All parties consented to

the jurisdiction of a magistrate judge, ECF No. 9, and jurisdiction is proper pursuant to 42 U.S.C.

§§ 405(g) and 1383(c)(3).

In her final decision, the ALJ applied the five-step sequential process for determining

whether an individual is disabled outlined in 20 C.F.R. § 404.1520(a)(4) and § 416.920(a)(4).[4]

---

[3] When citing to the Administrative Record, the court utilizes the docket number assigned by the court's Case Management/Electronic Case File ("CM/ECF") system and the page number associated with the Administrative Record, found in the bottom right-hand corner of the page. For all other documents, the court cites to the document and page number generated by the CM/ECF system.

[4] "The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.
2. The ALJ must then determine whether the claimed impairment is 'severe.' A 'severe impairment' must significantly limit the claimant's physical or mental ability to do basic work activities.
3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 10, 2018, her alleged disability onset date. ECF No. 8-2 at 17. At step two, the ALJ found that Plaintiff had severe impairments of systemic lupus erythematosus ("SLE"), irritable bowel syndrome ("IBS"), postural orthostatic tachycardia syndrome ("POTS"), endometriosis, hypothyroidism, depression, and anxiety. *Id.* at 18. The ALJ found that Plaintiff's conditions of Von Willebrand's disease and idiopathic thrombocytopenic purpura ("ITP") were non-severe because they did not cause more than minimal limitations on her physical and mental ability to do basic work activities. *Id.* Additionally, the ALJ found that Plaintiff's alleged fibromyalgia was not medically determinable because "the record contains no objective evidence that the claimant has fibromyalgia." *Id.*

At step three, the ALJ concluded that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments in the disability regulations. *Id.* In so doing, the ALJ found that there was no specific listing for POTS, endometriosis, or hypothyroidism, but she nevertheless considered whether those conditions met any of the listed impairments and found "no evidence that the clinical findings from [these]

---

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.
5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity."

*Wilson v. Astrue*, No. 10-cv-00675-REB, 2011 WL 97234, at *2 (D. Colo. Jan. 12, 2011); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (setting forth five-step sequential evaluation process).

impairment[s] reaches the level of severity contemplated in the listings." *Id.* at 19.

The ALJ next determined that Plaintiff had the residual functional capacity ("RFC") to perform "sedentary" work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a),[5] except she can lift and carry up to 10 pounds occasionally and less than 10 pounds frequently. *Id.* at 20. The ALJ also assessed the following limitations:

> Plaintiff can never climb ladders, ropes or scaffolds; never crawl; but occasionally can climb ramps or stairs. She can occasionally balance, stoop, kneel, and crouch. She can frequently handle and finger bilaterally. She can have occasional exposure to extreme cold. She can have no use of moving hazardous machinery and have no exposure to unprotected heights. She can understand, remember, and carry out instructions that can be learned after a brief demonstration and up to and including 30 days of on-the-job training. She can keep pace sufficient to complete tasks that are typically found in unskilled work. She can work with the public, supervisors, and coworkers; and has no difficulties adapting to changes in the workplace.

*Id.* (cleaned up).

At step four, the ALJ concluded that Plaintiff had no past relevant work. *Id.* at 24. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff was capable of performing, such as charge account clerk, touchup screener, and document preparer. *Id.* at 25. The ALJ therefore concluded that Plaintiff had not been under a disability from her alleged disability onset date of March 10, 2018, through the date of the ALJ's decision on August 5, 2021. *Id.*

---

[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

## STANDARD OF REVIEW

In reviewing the ALJ's final decision, this court "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014) (citation omitted). "The phrase 'substantial evidence' is a 'term of art,' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citing *T-Mobile South, LLC v. Roswell*, 574 U.S. 293, 301 (2015)). In applying the substantial-evidence standard, the United States Supreme Court directs that

> a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of 'substantial' in other contacts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Id.* (cleaned up); *see also Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004) ("Substantial evidence requires more than a scintilla but less than a preponderance.") (quoting *U.S. Cellular Tel., L.L.C., v. City of Broken Arrow, Okla.,* 340 F.3d 1122, 1133 (10th Cir. 2003)). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Zoltanski*, 372 F.3d at 1200 (quoting *U.S. Cellular*, 340 F.3d at 1133). This court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Knight*, 756 F.3d at 1175 (citation omitted); *see also Zoltanski*, 372 F.3d at 1200 (explaining that the court may not "displace the agency's choice between two fairly conflicting views").

Finally, because Plaintiff is acting pro se, this court construes her filings liberally, but

does not act as her advocate.[6] *Alford v. Comm'r, SSA*, 767 F. App'x 662, 664 (10th Cir. 2019)

(citing *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005)); *see also,*

*e.g.*, *F.R. v. Kijakazi*, No. 20-cv-00729-CMA, 2022 WL 4008041, at *2 (D. Colo. Sept. 2, 2022)

(noting, upon judicial review of an SSA determination of disability benefits, that when the

claimant is proceeding pro se the court must liberally construe her filings and hold them "to a

less stringent standard than those drafted by attorneys") (quoting *Trackwell v. United States*, 472

F.3d 1242, 1243 (10th Cir. 2007)). Therefore, this court "cannot take on the responsibility of

serving as [Plaintiff's] attorney in constructing arguments and searching the record." *Crampton*

*v. Comm'r, SSA*, 778 F. App'x 574, 577 (10th Cir. 2019) (quoting *Garrett*, 425 F.3d at 840).

## ANALYSIS

Giving Plaintiff's pro se brief the liberal construction to which it is entitled, the court

perceives her to have raised the following arguments on appeal: (1) the ALJ erred in evaluating

the severity of her alleged impairments at step two; (2) the ALJ erred in assessing her RFC; and

(3) the ALJ erred in making factual determinations at step five. The court evaluates each

contention, in turn, and finds no merit in them.

### A.      The ALJ's Consideration of the Severity of Plaintiff's Impairments

Plaintiff raises two claims of error related to the ALJ's findings at step two of the

sequential evaluation. ECF No. 14 at 5, 10. Specifically, she challenges the ALJ's determination

as to whether her alleged fibromyalgia is a medically determinable impairment and the ALJ's

---

[6] Plaintiff was not represented by an attorney at her administrative hearing or during subsequent agency action. ECF No. 8-2 at 4, 5-9. At the hearing, the ALJ fully advised Plaintiff of her right to representation, which Plaintiff waived. *Id.* at 31-35, 37. Plaintiff appeared pro se throughout the remainder of the administrative proceedings, *Id.* at 4, and appears pro se before this court.

supposed failure to address or consider the severity of several other alleged impairments.

The issue at step two is whether the claimant suffers from at least one "severe" medically determinable impairment. *Manning v. Colvin*, 182 F. Supp. 3d 1156, 1163 (D. Colo. 2016) (citing *Dray v. Astrue*, 353 F. App'x 147, 149 (10th Cir. 2009)). Pursuant to the severity regulations, the claimant must make a threshold showing that her medically determinable impairment or combination of impairments significantly limits her ability to do basic work activities, i.e., "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b); *see also* 20 C.F.R. §§ 404.152, 416.921.

This court first addresses Plaintiff's assertion that the ALJ did not address her fibromyalgia when assessing her impairments at step two. This characterization of the record is belied by the ALJ's decision, which found that Plaintiff's fibromyalgia was non-medically determinable from the record. Specifically, the ALJ ruled:

> Although [Plaintiff] alleged having fibromyalgia, a medically determinable impairment may not be established solely on the basis of an individual's allegations regarding symptoms, but instead must be established by medical evidence consisting of signs, symptoms, or laboratory findings (20 CFR 404.1529, 404.1508, 416.908, and 416.929). Signs are anatomical, physiological, or psychological abnormalities that can be observed apart from an individual's statements regarding symptoms, and they must [be] shown by medically acceptable clinical and diagnostic techniques (20 CFR 404.1528(b) and 416.908)).

ECF No. 8-2 at 18. The ALJ found that "[i]n the present case, the record contains no objective evidence that [Plaintiff] has fibromyalgia. Therefore, this alleged impairment is non-medically determinable." *Id.*

The ALJ adequately considered whether Plaintiff's alleged impairment of fibromyalgia was medically determinable and reasonably concluded that the record did not include evidence to

establish that it was. *Id*. at 18, 21; *see also* Social Security Ruling ("SSR") 12-2p, 2012 WL 3104869, at *2-3 (July 25, 2012) (discussing the specific objective medical evidence and exclusionary medical findings required to establish fibromyalgia as a medically determinable impairment). SSR 12-2p requires the following: (1) a physician must have diagnosed fibromyalgia; (2) the physician must have provided evidence described by either (a) the 1990 American College of Rheumatology ("ACR") criteria, or (b) the 2010 ACR Preliminary Diagnostic Criteria; and (3) the physician's diagnosis must not be inconsistent with other evidence in the record. *Id.* This court's review of the record does not reveal any evidence in support of these criteria. Nor has Plaintiff referenced or provided this court with a citation to any evidence that contradicts the ALJ's determination that her fibromyalgia was not a medically determinable impairment. *See N.M. v. Kijakazi*, No. 21-cv-00598-REB, 2022 WL 1239326, at *3 (D. Colo. April 26, 2022) (upholding the ALJ's determination that a pro se plaintiff's fibromyalgia was not a medically determinable impairment, where the record showed a diagnosis of and treatment for fibromyalgia but did not appear to include any objective medical evidence establishing the existence of that condition).

The court notes that Plaintiff attached to her brief on appeal additional evidence in the form of a letter from Dr. Sarah L. Boyer at Kaiser Permanente, dated February 10, 2023, indicating that Plaintiff "has been diagnosed with fibromyalgia 2/17/2022." ECF No. 14 at 14. The letter from Dr. Boyer is not period-relevant, however, because it states that Plaintiff was diagnosed "2/17/2022," which is after the ALJ's August 2021 decision. Additionally, Plaintiff has not shown grounds for remand to the Commissioner to assess this new evidence pursuant to 42 U.S.C. § 405(g), in that the letter is not material because the mere diagnosis of fibromyalgia

(or, as is the case here, the mere statement that a fibromyalgia diagnosis had been made) is insufficient to establish fibromyalgia as a medically determinable impairment. *See* SSR 12-2p, 2012 WL 3104869, at \*2 (to assess fibromyalgia as a medically determinable impairment, the ALJ "cannot rely upon the physician's diagnosis alone"). Nor has Plaintiff shown good cause for her failure to obtain and submit this evidence to the Appeals Council, which issued the notice of its action on March 10, 2022. *See Nguyen v. Shalala*, 43 F.3d 1400, 1403 (10th Cir. 1994) (a remand under 42 U.S.C. § 405(g) may be appropriate when "new and material evidence comes to light, and there is good cause for failing to incorporate such evidence in the earlier proceeding"); *see also Wilson v. Astrue*, 602 F.3d 1136, 1149-50 (10th Cir. 2010) (finding that a claimant had not shown good cause because she had not explained why she could not have previously obtained and submitted the opinions to the ALJ or, at least, to the Appeals Council).

To the extent Plaintiff argues that the ALJ erred when failing to address or consider the severity of several of her alleged impairments at step two, ECF No. 14 at 10, any error in not addressing these other claimed impairments did not affect the sequential evaluation process. Because the ALJ found that Plaintiff suffered from some severe impairments—namely, SLE, IBS, POTS, endometriosis, hypothyroidism, depression, and anxiety—any failure to find that Plaintiff's other impairments were severe at step two is harmless and does not constitute error justifying remand. *See Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (holding that "the failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe"); *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("any error here became harmless when the ALJ reached the proper conclusion that [the claimant] could not be denied benefits conclusively at step two and proceeded to the

next step of the evaluation sequence"); *see also T.T. v. Kijakazi*, No. 22-cv-003359-LTB, 2023 WL 9425677, at *4 (D. Colo. Dec. 18, 2023) ("any error in this determination does not affect the ALJ's sequential evaluation process in that he found that Plaintiff did have other severe impairments at Step Two and then considered all her impairments (both severe and non-severe) when subsequently assessing her RFC").

> **B.      The ALJ's Assessment of Plaintiff's RFC**

Plaintiff's arguments on appeal relate primarily to her various assertions that the ALJ failed to consider or include limitations on her ability to work when assessing her RFC. ECF No. 14 at 2, 10-11. The record does not support Plaintiff's position.

A claimant's RFC is an assessment of the most work the claimant can physically and mentally perform, not the least. 20 C.F.R. §§ 404.1545(a)(1) ("Your residual functional capacity is the most you can still do despite your limitations."), 416.945(a)(1) (same); *see also, e.g.*, *Spencer v. Kijakazi*, No. 20-cv-00786-NYW, 2021 WL 4133920, at *3 (D. Colo. Sept. 10, 2021) (noting this standard). In formulating a claimant's RFC, the ALJ must consider the combined effect of all the claimant's medically determinable impairments, including the severe and non-severe. *Spencer*, 2021 WL 4133920, at *3 (citing *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013)); *Ray v. Colvin*, 657 F. App'x 733, 734 (10th Cir. 2016) ("An ALJ must consider the limiting effects of non-severe impairments in determining the claimant's RFC."). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). This court will uphold the RFC assessment if it is consistent with the record and supported by

substantial evidence. *Spencer*, 2021 WL 4133920, at *3 (citing *Howard v. Barnhart*, 379 F.3d 945, 947, 949 (10th Cir. 2004)). Upholding the ALJ's assessment of Plaintiff's RFC is warranted here.

The ALJ found, after careful consideration of the entire record, that Plaintiff has the RFC to perform sedentary work, except she can lift and carry up to 10 pounds occasionally and less than 10 pounds frequently, and she can stand and/or walk for about two hours and sit for about six hours in an eight-hour workday with normal breaks. ECF No. 8-2 at 20. However, the ALJ found that Plaintiff could never climb ladders, ropes or scaffolds, or crawl, and could only occasionally climb ramps or stairs; balance; stoop, kneel, and crouch; and be exposed to extreme cold. *Id.* The ALJ further found that Plaintiff can frequently handle and finger bilaterally, but cannot use moving hazardous machinery and cannot be exposed to unprotected heights. *Id.* Finally, the ALJ found Plaintiff can understand, remember, and carry out instructions that can be learned after a brief demonstration and up to and including 30 days of on-the-job training; keep pace sufficient to complete tasks that are typically found in unskilled work; and work with the public, supervisors, and coworkers. *Id.* And Plaintiff was assessed as having no difficulties adapting to changes in the workplace. *Id.*

Plaintiff asserts, reading her arguments broadly, that the ALJ erred in determining the effect of her symptoms from her various alleged impairments—specifically, her pelvic pain, menorrhagia (heavy menstrual bleeding), cyclical vomiting, chronic back pain, gastroesophageal reflux disease ("GERD"), and chronic costochondritis (pain in her chest due to inflammation of the cartilage)—on her ability to work and her RFC. But the ALJ addressed these issues.

In the decision, the ALJ acknowledged Plaintiff's complaint of chronic pelvic pain due to

endometriosis (citing ECF No. 8-9 at 1722, 1627), but noted that 2018 imaging of Plaintiff's

abdomen "showed no findings of inflammatory change, obstruction, or abnormal fluid collection

and only mild constipation" (citing ECF No. 8-7 at 643); an ultrasound of Plaintiff's pelvis from

2018 "revealed a small cyst in the right ovary" (citing *id.* at 672); and, on exam, Plaintiff had

only "tenderness" in her abdomen (citing ECF No. 8-9 at 1723, ECF No. 8-7 at 644, 649). ECF

No. 8-2 at 21. The ALJ further noted that Plaintiff underwent a hysterectomy in August 2020

(citing ECF No. 8-9 at 1715), which "helped 85% of the pain on her left upper and lower

quadrant and [she] feels the right side was helped 15%" (citing ECF No. 8-10 at 1796). ECF No.

8-2 at 21. And Plaintiff, in her brief, concedes that since her hysterectomy, she no longer suffers

from menorrhagia, and that it is "considered to be cured." ECF No. 14 at 4.

> With regard to her chronic vomiting, the ALJ found that Plaintiff
>
> reported that she often had symptoms of near-syncope and cyclic vomiting [citing ECF No. 8-9 at 1445, ECF No. 8-7 at 685, ECF No. 8-9 at 1655]. [Plaintiff] had an upright tilt test negative for syncope, but the response to the test was abnormal with increase of SBP and DBP and heart rate [citing ECF No. 8-7 at 686]. The record shows that [Plaintiff] is treated twice weekly for hydration for her POTS with intermittent normal saline infusions [citing ECF No. 8-9 at 1652-53, 1656, ECF No. 8-9 at 1717]. [Plaintiff] also treated her POTS with medication and reported that she had been less nauseated [citing ECF No. 8-9 at 1637].

ECF No. 8-2 at 21. In addition, the ALJ noted that Plaintiff "reported feels better with IVF

treatment and is no longer dehydrated as much and has less vomiting" (citing ECF No. 8-9 at

1653). *Id.* at 21-22.

As for Plaintiff's chronic back pain, the ALJ indicated that imaging of Plaintiff's thoracic

spine "showed only minimal degenerative changes" (citing ECF No. 8-9 at 1465); that Plaintiff

"received intercostal injections for her chronic back pain" (citing *id.* at 1730); and that "the

record shows that she was consistently ambulatory and steady on her feet" (citing *id.* at 1657, ECF No. 8-10 at 1792, 1824). ECF No. 8-2 at 21. In addition, the ALJ noted that Plaintiff's SLE was in remission. *Id.* (citing ECF No. 8-9 at 1569).

Finally, to the extent Plaintiff asserts that the ALJ failed to consider the effects of her GERD and chronic costochondritis on her ability to work, Plaintiff has not provided this court with a citation to the record that supports a determination that these alleged impairments were either medically determinable or, more importantly, that they affected her ability to work. Moreover, this court's review of the record does not reveal such evidence. *See e.g.*, *Zavala v. Kijakazi*, No. CIV-20-1139-STE, 2021 WL 6051107, at *4 (W.D. Okla. Dec. 21, 2021) (finding that claimant did not meet his burden of establishing his RFC when he "has not demonstrated that either his IBS or GERD results in functional limitations greater than those included in the RFC").

Plaintiff makes various additional arguments that, when read liberally, challenge the ALJ's factual findings related to her RFC and her ability to work. First, Plaintiff contends that the ALJ erred when assessing her need to use a wheelchair. While she concedes that a wheelchair has not been prescribed for her, she argues that a prescription was not necessary because her family already owned a wheelchair. ECF No. 14 at 2. She further asserts that it "is known and has been recognized by [her] Rheumatologist, Hematologist OBGYN and Psychologist that this is a means to help reduce pain and conserve energy." *Id.* Plaintiff refers to records in which she reported to her physical therapist that she uses a wheelchair (citing ECF. No. 8-8 at 810 & 839), and reported to the consultative psychological examiner that her pain is "significantly affecting her mobility" and that "[e]very four months because of severe pain, she

might need to be in a wheelchair" (citing ECF No. 8-9 at 1408). ECF No. 14 at 2.

However, the ALJ's omission of wheelchair use when assessing Plaintiff's RFC is supported by substantial objective medical evidence in the record. While Plaintiff claimed that "she uses a wheelchair for pain and it helps her conserve her energy," the ALJ found that her "statements concerning the intensity, persistence, and limiting effects of [her pain] symptoms are not entirely consistent with the medical evidence . . ." ECF No. 8-2 at 21. Moreover, in concluding that Plaintiff's "allegations are generally inconsistent with the record,"[7] the ALJ observed that Plaintiff

> reported that she went to Disney World, but used a wheelchair often when she was tired [citing ECF No. 8-10 at 1801]. The record shows that although she reported that she uses a wheelchair, she consistently moved all her extremities normally and ambulated without an assistive device on exam [citing ECF No. 8-9 at 1720, ECF No. 8-7 at 649, ECF No. 8-9 at 1657, ECF No. 8-10 at 1792, 1799 & 1885]. Additionally, treatment notes indicated she does not meet the criteria for power mobility wheelchair because she is able to ambulate, and would see if manual wheelchair is an option for her, but there is no indication in the record that she was advised to get a wheelchair [citing ECF No. 8-2 at 21 1886]. [Plaintiff] also reported that she traveled with her sister for one month, walks about 3,000 steps a day, and does online Pilates and yoga [citing ECF No. 8-10 at 1793, 1088, ECF No. 8-9 at 1664]. Moreover, treatment notes indicated that [Plaintiff] is able to perform light or sedentary work and is ambulatory [citing ECF No. 8-9 at 1654, ECF No. 8-10 at 1792, 1799, 1805, 1815].

---

[7] This court finds no fault in the ALJ's determination to not fully credit Plaintiff's subjective reports concerning her own perceived functional abilities and limitations. "[C]redibility determinations are peculiarly the province of the finder of fact, and should not be upset if supported by substantial evidence." *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) (citation and internal quotation marks omitted). Provided that the ALJ has linked her credibility assessment to specific evidence in the record—and the ALJ has done so here—her determination should not be upset by this court. *Id.* at 910; *see also Qualls v. Apfel*, 206 F.3d 1368, 1372-73 (10th Cir. 2000); *Zagorianakos v. Colvin*, 81 F. Supp. 3d 1036, 1045 (D. Colo. 2015).

ECF No. 8-2 at 22. This court further notes Plaintiff indicated on her Function Report for the SSA that a wheelchair has not been prescribed for her but was "just suggested." ECF No. 8-6 at 243. An RFC should include the use of an assistive device when there is evidence in the form of medical documentation "establishing the need" for the device and "describing the circumstances for which it is needed." SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996); *see also Margaret C. M. v. Kijakazi*, No. 3:21-CV-00947-B-BT, 2022 WL 3372422, at *3 (N.D. Tex. Aug. 1, 2022) ("To find that a [handheld] assistive device [such as a cane or wheelchair] is medically required, there must be medical documentation establishing the need for the device to aid in walking or standing and describing the circumstances for which it is needed.") (quotation omitted; brackets in original) (citing SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996)), *report and recommendation adopted*, 2022 WL 3371336 (N.D. Tex. Aug. 16, 2022). In this case, substantial record evidence supports the ALJ's decision not to include additional limitations in Plaintiff's RFC. *See Ash v. Berryhill*, No. CIV-17-127-HE, 2017 WL 6045969, at *4 (W.D. Okla. Oct. 30, 2017), *report and recommendation adopted*, 2017 WL 6045541 (W.D. Okla. Dec. 6, 2017).

This court also rejects as contrary to the record Plaintiff's argument that the ALJ did not consider side effects from her numerous prescriptions on her ability to work. The ALJ found that Plaintiff's medications and treatment were effective, in that she consistently reported to her providers that she was doing well and that she benefited from treatment. ECF No. 8-2 at 22 (citing ECF No. 8-9 at 1717, 1622, 1418, 1427, ECF No. 8-7 at 703, ECF No. 8-10 at 1788). Bolstering this conclusion is the fact that Plaintiff did not assert at the hearing that her medications caused any detrimental side effects. *See id.* at 31-50. Further, a review of the entire record reveals no specific complaints of side effects by Plaintiff beyond a single assertion that

she experienced weight gain in July 2019. ECF No. 8-9 at 1566. Other than this, the record reflects only general discussions of potential side effects and negative drug interactions *See* ECF No. 8-7 at 352, 736; ECF No. 8-8 at 784, 846, 900; ECF No. 8-9 at 1457, 1572; ECF No. 8-10 at 1929, 1998, 2028. For example, in August 2018, a provider noted that Plaintiff had "resisted" taking a drug because she was "*worried* for side effects," but that does not amount to a report that side effects actually occurred. *See* ECF No. 8-8 at 832 (emphasis added); *see also* ECF No. 8-10 at 1856 (noting Plaintiff's complaint of potential side effects on June 24, 2020, and her provider's determination that it was "most likely [an] allergy" since the symptoms resolved completely with Benadryl). In short, Plaintiff points to no evidence in the record that she reported medication side effects to her providers, or that any such side effect limited her ability to work. *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 938 (11th Cir. 2011) ("a claimant's failure to report side effects to his physicians is an appropriate factor for the ALJ to consider in evaluating whether a claimant's alleged symptoms are consistent with the record") (citation omitted).

Finally, Plaintiff argues that the ALJ did not consider Plaintiff's time commitment to various necessary in-person medical treatments—for physical therapy, infusions, and injections—when assessing her RFC and when eliciting the vocational expert's opinion as to the availability of jobs Plaintiff could perform. Plaintiff contends that the time she would have to miss work for treatment would result in eight to nine absences a month. Here, again, Plaintiff fails to refer this court to record *evidence* substantiating her speculative assessment of the extent of her anticipated absenteeism. *See Barnett v. Apfel*, 231 F.3d 687, 691 (10th Cir. 2000) (rejecting argument that ALJ erred "by failing to consider plaintiff's absenteeism," where "[n]o

such evidence was presented at the hearing").

This court concludes that Plaintiff's challenges to the ALJ's findings related to her ability to work when determining her RFC, even when liberally interpreted, do not reveal any error. The ALJ's RFC assessment is supported by substantial record evidence. *See Spencer*, 2021 WL 4133920, at *3 (an RFC assessment will be upheld if it is consistent with the record and supported by substantial evidence).

### C.      The ALJ's Findings at Step Five

Plaintiff makes several complaints about the ALJ's findings at step five of the sequential evaluation process. None show that the ALJ's findings lack substantial evidentiary support.

Taking first Plaintiff's vague and conclusory contention that the ALJ somehow used Plaintiff's age "in a discriminatory manner," ECF No. 14 at 2, the court finds no cause to reject the ALJ's decision on this basis. Age, of course, is a factor the ALJ *must* consider at step five of the sequential evaluation process, when "the burden of proof shifts to the Commissioner . . . to show that the claimant retains a sufficient RFC to perform work in the national economy, *given her age*, education, and work experience." *Wells*, 727 F.3d at 1064 n.1 (emphasis added); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Here, the record shows that the ALJ properly considered Plaintiff's "residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines" found at 20 C.F.R. Part 404, Subpart P, Appendix 2, then proceeded to consult with a vocational expert because Plaintiff's "ability to perform all or substantially all of the requirements of [sedentary] work has been impeded by additional limitations." *Id.* at 24-25; *see also* SSR 83-12, 1983 WL 31253, *2 ("Where the extent of erosion of the occupational base is not clear, the adjudicator will need to

consult a vocational resource.").

Plaintiff points to nothing in the record giving the slightest hint that the ALJ used Plaintiff's age against her in a discriminatory manner, or otherwise indicating that the ALJ harbored any bias toward her. Neither has this court identified any such evidence in its review of the entire record. Rather, the record demonstrates that the ALJ's conclusions followed a careful consideration of Plaintiff's extensive medical records and her testimony, the opinions of a psychological consultative examiner and state agency psychological and medical consultants, and the testimony of the aforementioned vocational expert. This record gives the court no reason to question that Plaintiff "received a full and fair opportunity to develop the record and present" evidence. *Puckett v. Chater*, 100 F.3d 730, 734 (10th Cir. 1996) (finding "plaintiff's conclusory allegation of bias by the ALJ is without support in the administrative record, which shows that plaintiff received a full opportunity to develop the record and present post-hearing evidence"); *see also Harline v. Drug Enforcement Admin.,* 148 F.3d 1199, 1204 (10th Cir. 1998) (observing that an ALJ "enjoys a presumption of honesty and integrity" which is only rebutted by "some substantial countervailing reason to conclude that a decisionmaker is actually biased with respect to factual issues being adjudicated") (quotation omitted). No error can be discerned in Plaintiff's unsupported allegation of age-based discrimination.

Neither has Plaintiff shown that the ALJ erred in finding that Plaintiff completed her high school education. *See* ECF No. 14 at 2. Plaintiff asserts that the ALJ did not account for the fact that she only received her General Educational Development ("GED") credential, as opposed to a high school diploma, when assessing at step five of the sequential analysis whether jobs exist in significant numbers in the national economy that Plaintiff can perform. *See* ECF No. 8-2 at 24

(finding that "[t]he claimant has at least a high education"). This does not amount to reversible error. "[R]egardless whether [P]laintiff actually has a high school diploma or GED certificate, the substance of the ALJ's conclusion—that plaintiff had attained a level of education at least equivalent to that of a high school graduate—is thoroughly supported by [her] review and discussion of the evidence before [her]," which included information showing that Plaintiff had attended college for a period of time. *See Starr v. Berryhill*, No. 17-cv-00705-REB, 2018 WL 899253, at *5 (D. Colo. Feb. 15, 2018); *see also* ECF No. 8-2 at 40. In any event, a high school diploma is not a prerequisite for the unskilled jobs which the ALJ found that Plaintiff could perform. ECF No. 8-2 (in concluding that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," referencing three "SVP2, unskilled" jobs). Here again, there is no error, much less reversible error.

Finally, there is no reversible error to be derived from the ALJ's finding that Plaintiff had been working as a nanny during the relevant period. ECF No. 14 at 11. To the contrary, substantial evidence supports the ALJ's conclusion on that point. Contemporaneous medical records confirm that, on December 10, 2020, Plaintiff reported to a medical provider that she was "[r]elatively active at this point *working five half days a week as a nanny*." ECF No. 8-10 at 1803 (emphasis added). She repeated that statement to a physician. *Id.* at 1800.[8] *See also* ECF No. 8-2 at 19-20, 22 (citing to these statements in finding that Plaintiff works as a half-time nanny). Plaintiff later backtracked on these statements when she testified at the hearing that she had

---

[8] It is unclear from this medical record whether Plaintiff's statement to her physician was made during a medical encounter on December 3, 2020, or January 5, 2021. *See* ECF No. 8-10 at 1800. Regardless, the record indisputably shows that Plaintiff informed her doctor that she was working as a nanny during the relevant timeframe.

"stopped working, as a nanny" in March 2018. *Id.* at 39. And now, in her briefing on this appeal,

Plaintiff claims that it was her *mother* and not herself who was working as a nanny. ECF No. 14

at 11 (claiming that "plaintiff is not and has never been a nanny," and "that it is the plaintiff's

mother that is a nanny and not the plaintiff"). Nevertheless, a plain reading of this record

evidence reveals no error in the ALJ's finding that Plaintiff worked as a nanny (and also that she

could babysit, a point she does not dispute, *see* ECF No. 8-2 at 20, 22), notwithstanding her

current allegations to the contrary. The business of evaluating this discrepant evidence rests with

the ALJ. This court will not reweigh the evidence before the ALJ and displace her "choice

between two fairly conflicting views." *See Zoltanski*, 372 F.3d at 1200. Put simply, substantial

record evidence supports the ALJ's findings on the "nanny" point.[9]

   At bottom, there was no error at step five of the sequential process, and substantial

evidence supports each of the ALJ's conclusions.

*    *    *

   In sum, the court's review of the Commissioner's decision is limited to addressing

whether they are founded upon the correct legal standard and supported by substantial evidence.

This "means—and means only—'such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" *Biestek*, 587 U.S. at 103 (quoting *Consol. Edison Co. v.*

*NLRB*, 305 U.S. 197, 229 (1938)). Here, the ALJ explained her reasoning clearly and repeatedly

---

[9] Furthermore, the ALJ's decision indicates that she relied on the findings regarding Plaintiff's work as a nanny in assessing Plaintiff's limitations arising from her impairments, and not in determining Plaintiff's gainful activity, relevant work history, or experience. *See* ECF No. 8-2 at 19-20, 22. In any event, the ALJ's findings concerning Plaintiff's work as a nanny are grounded on substantial evidence.

cited to an extensive evidentiary record in a lengthy, detailed decision. She applied the correct legal standard and based her decision on substantial evidence. The court therefore respectfully **AFFIRMS** the Commissioner's decision.

**CONCLUSION**

For the reasons set forth above, it is **ORDERED** that the decision of the Commissioner is **AFFIRMED**. Judgment shall enter accordingly.

Dated: July 30, 2024                                      BY THE COURT:

_____
Susan Prose
United States Magistrate Judge